UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| Eleanor Bosch,<br><br>    Plaintiff,<br><br>vs.<br><br>Pfizer, Inc.,<br><br>    Defendant. | Court File No. 08 CV 563 DWF/RLE<br><br>**COMPLAINT -**<br>**JURY TRIAL DEMANDED** |

Plaintiff, Eleanor Bosch, by and through counsel undersigned, alleges as her complaint against Defendant as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that the amount in controversy exceeds $75,000.00, and Plaintiff is a citizen of a State which is different from the State where Defendant is incorporated and has its principal place of business.

2. Venue is proper in this District pursuant to 28 U.S.C. §1391. The drug Bextra was prescribed for, purchased by, and ingested by individuals in the District of Minnesota. Defendant advertised in this District, received substantial compensation and profits from sales of the drug in this District, and made material omissions and misrepresentations and breached warranties in this District.

## THE PARTIES

### Plaintiff

3. Plaintiff, Eleanor Bosch, is a citizen of Minnesota. On or about March 1,

SCANNED
FEB 28 2008
U.S. DISTRICT COURT MPLS

2004, Plaintiff suffered a myocardial infarction and related disabilities as a result of ingesting Defendant's defective product, the pharmaceutical drug Bextra.

## Defendant

4.     At all times herein mentioned, Defendant Pfizer, Inc., was and is a corporation existing under the laws of incorporation of the State of Delaware, with its principal place of business in New York, doing business in the State of Minnesota. At all times herein mentioned, Defendant designed, manufactured, tested, analyzed, distributed, recommended, merchandised, advertised, promoted, supplied and sold a certain pharmaceutical drug herein referred to as Bextra.

## **FACTUAL ALLEGATIONS**

5.     Bextra is the brand name of valdecoxib, a COX-2 inhibitor, which purportedly reduces inflammation and pain associated with osteoarthritis, rheumatoid arthritis and primary dysmenorrhea.

6.     Bextra was approved by the Food and Drug Administration (FDA) in November 2001 for treatment of osteoarthritis, rheumatoid arthritis and primary dysmenorrhea.

7.     The cardiac problems associated with COX-2 inhibitors such as Bextra, have been documented since at least 2000. For example, a study published in the August 29, 2000 edition of Proceedings of the National Academy of Science entitled <u>Cyclooxyganase-2 Mediates the Cardioprotective Effects of the Late Phase of Ischemic Preconditioning in Conscious Rabbits</u>, by Dr. Ken Shinmura et al., determined that COX-2 inhibitors blocked cardioprotective enzymes and thus increased the risk of heart attacks and strokes. These

findings were further supported by an article that appeared in the August 14, 2001 issue of Circulation entitled <u>Selective Cyclooxygenase-2 Inhibition on Vascular Response and Thrombosis in Canine Coronary Arteries</u>, by Dr. James K. Hennan et al., concluding that there were significant "concerns regarding an increased risk of adverse vascular events in patients receiving COX-2 inhibitors." A third study, entitled <u>Risk of Cardiovascular Events Associates with Selective COX-2 Inhibitors</u>, by Dr. Debabrata Mukherjee et al., published in the August 22/29, 2001 edition of the Journal of the American Medical Association, also found that the "[c]urrent data would suggest that the use of selective COX-2 inhibitors might lead to increased cardiovascular events."

8. Despite having clinical data in its possession, including but not limited to the studies identified above, indicating that the ingestion of Bextra represented an increased risk of cardiovascular injury, Defendant represented to consumers, their physicians, and Plaintiff that Bextra was safe and effective.

9. Defendant sold Bextra by misleading users about the product and by failing to adequately warn the users of the potential serious dangers which Defendant knew or should have know might result from consuming its product. Defendant widely and successfully marketed Bextra throughout the United States by, among other things, conducting promotional campaigns which misrepresented the efficacy of Bextra in order to induce widespread use and consumption. Defendant made misrepresentations by means of media advertisements, and statements contained in literature provided to Plaintiff's prescribing physician.

10. On October 15, 2004, Defendant announced its own studies that demonstrated that the occurrence of strokes and heart attacks among Bextra users was

more than double that of individuals given placebo.

11.     On April 7, 2005, the FDA ordered Defendant to recall Bextra due to the significant cardiovascular risks.

12.     As a result of ingesting the products manufactured, supplied, and/or sold by Defendant, on or about March 1, 2004, Plaintiff suffered a myocardial infarction. As a result of the dangerously defective nature of Defendant's product, Bextra, at the time of manufacture and distribution, Plaintiff, by using Bextra, sustained the injuries and damages as herein alleged.

13.     As a direct and proximate result of Defendant's negligence as further described herein, Plaintiff sustained a myocardial infarction and, as a result, sustained profound physical injury and economic loss in amount as yet unascertained.

14.     Had Plaintiff known the risks and dangers associated with Defendant's product Bextra, or had Defendant disclosed such information to Plaintiff and her physicians, Plaintiff would not have taken Defendant's product Bextra and would not have suffered her Bextra-related injuries.

## COUNT I: NEGLIGENCE

15.     Plaintiff restates each and every preceding allegation of this Complaint and incorporates each by reference as though set forth in full herein.

16.     Defendant, directly or indirectly, negligently manufactured, designed, tested, labeled, packaged, distributed, promoted, marketed, advertised, or sold Bextra (valdecoxib) in the stream of commerce, when the Defendant knew, or in the exercise of ordinary care, should have known that Bextra posed a significant risk to Plaintiff's health and well-being,

which risk was not known to Plaintiff or their prescriber.

17. At all times material hereto, Defendant had a duty to Plaintiff to exercise reasonable care in the design, testing, labeling, packaging, distribution, promotion, marketing, advertisement, sampling or sale of Bextra (valdecoxib).

18. Defendant breached its duty and was negligent in its actions, misrepresentations, and omissions toward Plaintiff in that the Defendant:

   a. Failed to include adequate warnings with the medications that would alert Plaintiff and other consumers to the potential risks and serious side effects of Bextra ingestion;

   b. Failed to include adequate information or warnings with the medication that would alert Plaintiff and the health care community to refrain from use of Bextra without first prescribing traditional NSAIDs such as naproxen or ibuprofen;

   c. Failed to adequately and properly test Bextra before and after placing it on the market;

   d. Failed to conduct sufficient testing on Bextra which, if properly performed, would have shown that Bextra had serious side effects, including, but not limited to the cardiovascular events described above;

   e. Failed to adequately warn Plaintiff and her health care providers that use of Bextra carried a risk of cardiovascular events, stroke and death; among other serious side effects;

   f. Failed to provide adequate post-marketing warnings or instructions after the Defendant knew or should have known of the significant risks of personal injury and death as identified herein among other serious side effects from the use of Bextra;

   g. Failed to adequately warn Plaintiff that Bextra should not be used in conjunction with any risk factors for these adverse effects such as a family history of ischemic heart disease, or risk factors for ischemic cardiovascular disease;

   h. Failed to adequately disclose and warn Plaintiff that they undertook the risk of adverse events and death as described herein;

> i. Failed to adequately disclose and warn Plaintiff that they undertook the risks of serious personal injury and death from Bextra ingestion as described herein.

19. Defendant knew or should have known that Bextra caused unreasonably dangerous risks and serious side effects, including death, of which Plaintiff would not be aware. Defendant Pfizer nevertheless advertised, marketed, sold and distributed Bextra knowing that there were safer methods and products.

20. As a direct and proximate result of the negligence and breach of Defendant, Plaintiff sustained serious injury or death. Defendant owed a duty to Plaintiff to use reasonable care in its actions. Defendant's failure to use reasonable care proximately caused Plaintiff's injuries.

## COUNT II: STRICT LIABILITY (Failure to Warn)

21. Plaintiff restates each and every preceding allegation of this Complaint and incorporates each by reference as though set forth in full herein.

22. Defendant, as a manufacturer and supplier of Bextra, failed to provide proper warnings regarding all possible adverse side effects regarding the use of Bextra, as well as the severity and duration of such adverse effects.

23. Defendant failed to perform adequate testing that would have shown that Bextra possessed serious potential side effects with respect to which full warnings were needed.

24. Defendant, a manufacturer and supplier of Bextra, failed to provide adequate post-marketing warning and instruction because, after Defendant knew or should have known of the risk of injury and deaths from Bextra, Defendant failed to provide adequate

warnings and continued to aggressively promote Bextra.

25. As the direct and proximate result of the defective condition and inadequate warning of Bextra:

      a. Plaintiff suffered personal injury;

      b. Plaintiff suffered economic loss; and

      c. Plaintiff expended, and may in the future be required to expend, fair and reasonable expense or necessary health care, attention and services, and incurred incidental and related expenses.

### COUNT III: STRICT LIABILITY (Design Defect)

26. Plaintiff restates each and every preceding allegation of this Complaint and incorporates each by reference as though set forth in full herein.

27. Plaintiff ingested Bextra, a medication was manufactured, distributed, sold, prescribed or otherwise put into the stream of commerce by the Defendant Pfizer. The defective condition of Bextra rendered it unreasonably dangerous, and that said Bextra was in this defective condition at the time it left the hands of the Defendant.

28. The Defendant engaged in the manufacture, distribution, sale or prescription of pharmaceutical medications. Bextra, without substantial change in the condition in which it was sold, was a proximate cause of Plaintiff's injuries.

29. Plaintiff was unaware of the significant hazards and defect in the Bextra medication. Therefore, the Bextra medication was unreasonably dangerous in that it was more dangerous than would be reasonably contemplated by the ordinary user. During the periods that Plaintiff was taking Bextra, the medication was being utilized in a manner that was intended by Defendant.

30. Bextra was defectively designed because the foreseeable risks exceeded the

7

benefits associated with the design or formulation.

31. Additionally, Bextra is defective due to inadequate clinical trials, testing, study, and inadequate reporting regarding the results such.

32. Defendant designed, manufactured or placed into the stream of commerce the product, which reached Plaintiff in the same or substantially the same condition in which it was sold. Upon purchase by Plaintiff, the product was represented to be safe and free from latent defects.

33. Defendant is strictly liable to Plaintiff for designing, manufacturing, and placing into the stream of commerce the product which was unreasonably dangerous for its reasonably foreseeable uses at the time it left the control of Defendant because of the design defects which were a producing cause of the occurrence in question.

34. Defendant defectively marketed Bextra by failure to warn, adequately warn, or instruct in the safe use of the product, and such defect was a producing cause of the occurrence in question.

35. Defendant knew, or in exercising ordinary care, should have known that Bextra was defective and unreasonably dangerous to those persons likely to use the product for the purpose and in the manner of its intended use. Defendant was negligent in the particulars set forth in this and the preceding paragraphs and such negligence was a proximate cause of the occurrence in question.

36. Defendant owed Plaintiff the duty of reasonable care when they tested, designed, manufactured, and marketed the product in question. Defendant violated its duty and was negligent in the particulars set forth herein.

37. Defendant Pfizer is also strictly liable to Plaintiff under Section 402B of the

Restatement (Second) of Torts in misrepresenting to the public that its product was safe and without defect, which statement and misrepresentation was false and involved a material fact concerning the character or quality of Bextra, and upon which representations the consumer constructively relied, and which constituted a producing cause of injury at issue.

38. Further, each of the above and foregoing acts or omissions of Defendant were more than momentary thoughtlessness, inadvertence, or error of judgment. Such acts or omissions constituted such an entire want of care as to establish that the acts or omissions were the result of actual conscious indifference to the rights, safety, or welfare of the person or persons affected.

## COUNT IV: NEGLIGENT FAILURE TO WARN

39. Plaintiff restates each and every preceding allegation of this Complaint and incorporates each by reference as though set forth in full herein.

40. Bextra was not accompanied by appropriate warnings of the increased risk of adverse side effects caused by the ingestion of Bextra.

41. Defendant negligently failed to warn consumers who took Bextra that it was dangerous.

42. Defendant's negligence was the proximate cause of the harm suffered by Plaintiff.

43. As a direct and proximate cause of Defendant's negligence:

    a. Plaintiff suffered personal injuries;

    b. Plaintiff suffered economic loss; and

      c.      Plaintiff expended, and will in the future be required to expend, fair and reasonable expenses for necessary health care, attention and services and incurred incidental and related expenses.

### COUNT V: NEGLIGENCE PER SE

44.    Plaintiff incorporates by reference all preceding paragraphs as if full set forth herein and further alleges as follows:

45.    Defendant was negligence per se because it violated applicable statutes and regulations relating to prescription drugs. Plaintiff is a person whom these statutes and regulations were meant to protect.

46.    Defendant's negligence was the proximate cause of the harm suffered by Plaintiff.

47.    As a direct and proximate cause of Defendant's negligence:

    a. Plaintiff suffered personal injuries;

    b. Plaintiff suffered economic loss, including loss of earnings and loss of earning capacity;

    c. Plaintiff expended, and will in the future be required to expend, fair and reasonable expenses for necessary health care, attention and services and incurred incidental and related expenses.

### COUNT VI: MISREPRESENTATION AND SUPPRESSION

48.    Plaintiff restates each and every preceding allegation of this Complaint and incorporates each by reference as though set forth in full herein.

49.    Defendant misrepresented to Plaintiff and the health care industry the safety and effectiveness of Bextra or fraudulently, intentionally or negligently concealed material

information, including adverse information regarding the safety and effectiveness of Bextra.

50. Defendant made misrepresentations and actively concealed adverse information at a time when the Defendant knew, or should have known, that Bextra had defects, dangers, and characteristics that were other than what the Defendant had represented to Plaintiff and the health care industry generally. Specifically, Defendant misrepresented to or actively concealed from Plaintiff, the health care industry and consuming public that:

   a. Bextra had statistically significant increases in cardiovascular side effects, including, without limitation, thrombosis, myocardial infarction and sudden onset death, identified herein which could result in serious injury or death;

   b. There had been insufficient or company-spun studies regarding the safety and efficacy of Bextra before and after its product launch;

   c. Bextra was not fully and adequately tested for the cardiovascular side effects at issue herein;

   d. Other testing and studies showed the risk of or actual serious adverse risks; or that

   e. This was a greatly increased risk of such cardiovascular events and death; there was a confirmed mechanism by which these thrombotic or cardiovascular events occurred as reported in the scientific literature.

51. That the misrepresentations of, or active concealment alleged were perpetuated directly or indirectly by Defendant.

52. Defendant knew or should have known that these representations were false and made the representations with the intent or purpose that Plaintiff would rely on them, leading to the use of Bextra.

53. At the time of Defendant's fraudulent misrepresentations, Plaintiff was

unaware of the falsity of the statements being made and believed them to be true. Plaintiff had no knowledge of the information concealed or suppressed by Defendant.

54. Plaintiff justifiably relied on or was induced by Defendant's misrepresentations or active concealment and relied on the absence of safety information that Defendant did suppress, conceal or fail to disclose, to Plaintiff's detriment.

55. Defendant had a post-sale duty to warn Plaintiff and the public about the potential risks and complications associated with Bextra in a timely manner.

56. The misrepresentations and active fraudulent concealment by the Defendant constitutes a continuing tort against Plaintiff, who ingested Bextra.

57. Defendant made the misrepresentations and actively concealed information about the defects and dangers of Bextra with the intention and specific desire that Plaintiff's health care professionals and the consuming public would rely on such or the absence of information in selecting Bextra as treatment.

58. As a direct and proximate result of the fraudulent acts and omissions, suppression and misrepresentation of Defendant, Plaintiff suffered significant and ongoing injury and damages.

## COUNT VII: BREACH OF WARRANTY

59. Plaintiff restates each and every preceding allegation of this Complaint and incorporates each by reference as though set forth in full herein.

60. When Defendant placed Bextra into the stream of commerce, Defendant knew of the use for which it was intended and expressly and impliedly warranted to Plaintiff that use of Bextra was a safe and acceptable means of treatment.

61. Plaintiff reasonably relied on the expertise, skill, judgment and knowledge of the Defendant and upon the express or implied warranty that Bextra was of merchantable quality and fit for use as intended.

62. Bextra was not of merchantable quality and was not safe for fit for its intended use because it was and continues to be unreasonably dangerous and unfit for the ordinary purposes for which it is used in that it caused injury to Plaintiff. Pfizer breached the warranty because Bextra was unduly dangerous in expected use and did cause undue injury to Plaintiff.

63. Defendant breached the implied warranty of merchantability because Bextra cannot pass without objection in the trade, is unsafe, not merchantable, and unfit for its ordinary use when sold, and is not adequately packaged and labeled.

64. As a direct and proximate result of Pfizer's breach of the warranty of merchantability, Plaintiff sustained serious and permanent injuries.

## COUNT VIII: BREACH OF EXPRESS WARRANTY

65. Plaintiff restates each and every preceding allegation of this Complaint and incorporates each by reference as though set forth in full herein.

66. Defendant expressly warranted to the market, including the Plaintiff, by and through statements made by Defendant or its authorized agents or sales representatives, orally and in publications, package inserts, and other written materials to the health care community, that Bextra was safe, effective, fit and proper for its intended use.

67. In using Bextra, Plaintiff relied on the skill, judgment, representations, and foregoing express warranties of Defendant. These warranties and representations proved to be false because the product was not safe and was unfit for the uses for which it was

intended.

68. As a direct and proximate result of Defendant's breaches of warranties, Plaintiff was injured and suffered special and compensatory damages to be proven at trial.

### COUNT IX: FRAUD

69. Plaintiff restates each and every preceding allegation of this Complaint and incorporates each by reference as though set forth in full herein.

70. Defendant committed actual fraud by making material representations, which were false, knowing that such material representations were false or made with reckless disregard for the truth or falsity of such material representations, with the intent that Plaintiff rely on such material representations; Plaintiff acted in actual and justifiable reliance on such material misrepresentations and was injured as a result.

71. In addition, and in the alternative if necessary, Defendant knowingly omitted material information, which omission constitutes a positive misrepresentation of material fact, with the intent that Plaintiff rely on Defendant's misrepresentations and was injured as a result.

72. Defendant committed constructive fraud by breaching one or more legal or equitable duties owed to Plaintiff relating to the Bextra at issue in this lawsuit, said breach or breaches constituting fraud because of their propensity to deceive or other or constitute an injury to public interest or public policy.

## COUNT X: VIOLATION OF THE FALSE ADVERTISING ACT, THE CONSUMER FRAUD ACT, THE UNLAWFUL TRADE PRACTICES ACT AND THE UNIFORM DECEPTIVE TRADE PRACTICES ACT

73. Plaintiff restates and alleges each and every preceding allegation of this Complaint and incorporates each by reference as though set forth in full herein.

74. By reason of the conduct as alleged herein, and by inducing Plaintiff or her physicians to use Bextra through the use of false or misleading advertising, representations, and statements, defendant violated the provisions of Minn. Stat. §§ 325F.67, 325F.69, 325D.12, and 325D.44.

75. As a direct and proximate result of Defendant's statutory violations, Plaintiff used Bextra, which he would not have done had defendant not issued false, deceptive, or misleading advertising, representations and statements to induce Plaintiff and her physicians to use Bextra.

76. By reason of such violations and pursuant to Minn. Stat. § 8.31, subd. 3a, and §§ 325D.44, 325F.67, and 325F.68-70, and for the public benefit, Plaintiff is entitled to recover all of the profits made on the Bextra; monies paid for the Bextra; to be compensated for the cost of the medical care arising out of the use of the Bextra; together with any and all consequential damages recoverable under the law including, but not limited to, medical expenses, funeral and burial expenses, and loss of consortium.

## COUNT XI: UNJUST ENRICHMENT

77. Plaintiff restates each and every preceding allegation of this Complaint and incorporates each by reference as though set forth in full herein.

78. Defendant accepted payment from Plaintiff for the purchase of Bextra.

79. Plaintiff did not receive a safe and effective drug for which they paid.

80. It would be inequitable for Defendant to retain this money because Plaintiff did not, in fact, receive a safe and efficacious drug.

## PRAYER FOR RELIEF

Wherefore, Plaintiff demands judgment against Defendant for damages, as well as all costs of this action, to the full extent of the law, including:

(A) Damages to compensate Plaintiff for injuries sustained as a result of Bextra use, past and future lost income, and future medical expenses as proven at trial;

(B) Physical pain and suffering for Plaintiff;

(C) Pre and post-judgment interest at the lawful rate;

(D) Such other applicable damages as the Court deems appropriate.

## JURY DEMAND

PLAINTIFF DEMANDS THAT ALL ISSUES OF FACT IN HER CASE BE TRIED TO A PROPERLY IMPANELED JURY.

Dated: 2/28, 2008

GOLDENBERG & JOHNSON, PLLC

Stuart L. Goldenberg (158779)
Michael K. Johnson (258696)
33 South Sixth Street, Suite 4530
Minneapolis, MN 55402
Telephone: (612) 335-9960

ATTORNEYS FOR PLAINTIFF

STATE OF MINNESOTA )
                   ) ss.
COUNTY OF HENNEPIN )

**Sene M. Binsfeld**, being duly sworn upon oath, says that on the 28th day of February, 2008, I served the attached:

1. Civil Cover Sheet;
2. Summons;
3. Complaint; and
4. Check in the amount of $350.00 representing the filing fee,

via hand-delivery, directed to said persons at the address listed below:

> Clerk of Court
> U.S. Courthouse
> 300 South Fourth Street
> Minneapolis, MN 55415

and a copy of the same was deposited, with postage prepaid, in the United States mail at Minneapolis, Minnesota, directed to said persons at the address listed below:

> Amy W. Schulman, Esq.
> DLA PIPER, RUDNICK, GARY, CRAY
> 1251 Avenue of the Americas
> New York, NY 10020-1104

> Elizabeth J. Cabraser, Esq.
> LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP.
> Embarcadero Center West
> 275 Battery Street, Suite 300
> San Francisco, CA 94111-3339

_____
Sene M. Binsfeld

Subscribed and sworn to me before this
28th day of February, 2008.

_____
Notary Public

SHERI KAY GROSS
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2012

| | | |
|---|---|---|
| Stuart L. Goldenberg* <br> Michael K. Johnson <br> Lucia J.W. McLaren <br><br> Legal Assistants <br> Sheri K. Gross <br> Jake R. Jagdfeld <br> Sally C. Shortridge <br> Stacy A. Olson <br><br> Law Clerk <br> Sene M. Binsfeld | **GOLDENBERG** <br> **&** <br> **JOHNSON** <br> P L L C <br><br> ATTORNEYS AT LAW <br>  <br><br> Promoting Safety <br> Through Accountability | Administrative <br> Paula M. Verhunce <br> Lisa M. Wahoski <br><br> 33 South Sixth Street <br> Suite 4530 <br> Minneapolis, Minnesota 55402 <br><br> **Telephone (612) 333-4662** <br> Facsimile (612) 339-8168 <br> Toll Free (800) 279-6386 <br> goldenberglaw.com |

February 28, 2008

<u>VIA HAND-DELIVERY</u>

Clerk of Court
U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

RE:   Eleanor Bosch v. Pfizer, Inc.
       Our File: 9701

Dear Sir or Madam:

Enclosed for filing with regard to the above-referenced matter, please find the following:

1. Civil Cover Sheet;
2. Summons;
3. Complaint;
4. Our check in the amount of $350.00 representing the filing fee.

If you have any questions regarding this matter, please feel free to contact me. Thank you for your assistance in this matter.

Sincerely,

GOLDENBERG & JOHNSON, PLLC

Stuart L. Goldenberg
Direct Dial # (612) 335-9960

SLG/smb
Enc.

cc:   Eleanor Bosch *(w/enclosure)*
       Amy W. Schulman, Esq. *(w/enclosure)*
       Elizabeth J. Cabraser, Esq. *(w/enclosure)*

*State and National Civil Trial Specialist certified by MSBA and NBTA

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Eleanor Bosch

## DEFENDANTS
Pfizer, Inc.

**(b)** County of Residence of First Listed Plaintiff: Becker County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: Bronx County
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Stuart L. Goldenberg and Michael K. Johnson
GOLDENBERG & JOHNSON, PLLC
33 South Sixth Street, Suite 4530
Minneapolis, MN 55402
(612) 333-4662

Attorneys (If Known)
Amy L. Schulman
DLA PIPER RUDNICK GRAY CARY US LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 835-6180

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☒ 365 Personal Injury — Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 442 Employment / **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / ☐ 530 General | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff) | ☐ 894 Energy Allocation Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/ Disabilities Employment / ☐ 540 Mandamus & Other | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/ Disabilities - Other / ☐ 550 Civil Rights | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| | ☐ 440 Other Civil Rights / ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of State Statues |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): 28 U.S.C. § 1332
Brief description of cause: Plaintiff seeks damages for personal injuries caused by consuming Defendant's prescription drug Bextra

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ In excess of $75,000
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE Charles R. Breyer
DOCKET NUMBER 05-cv-01699-CRB

DATE 2/28/08
SIGNATURE OF ATTORNEY OF RECORD [signature]

SCANNED FEB 28 2008

**FOR OFFICE USE ONLY**

RECEIPT # ___ AMOUNT ___ APPLYING IFP ___ JUDGE ___ MAG. JUDGE ___

U.S. DISTRICT COURT